DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FLORIDA HOLDING 4800, LLC,**
Appellant,

v.

**LAUDERHILL LENDING, LLC** and **LAUDERHILL MALL INVESTMENT,
LLC,**
Appellees.

No. 4D18-1948

[June 26, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Raag Singhal, Judge; L.T. Case No. CACE16-012986.

Robert J. Hauser of Pankauski Hauser PLLC, West Palm Beach, for appellant.

Todd L. Wallen of Wallen Kelley, Coral Gables, for appellee Lauderhill Lending.

KLINGENSMITH, J.

Florida Holding 4800, LLC appeals the trial court's order granting Lauderhill Lending, LLC's motion for summary judgment for foreclosure. The property that is the subject of the foreclosure dispute was originally owned by Lauderhill Mall Investment (LMI), who then sold it to Florida Holding. Florida Holding raises several points on appeal claiming the trial court erred in granting the summary judgment, but we affirm as to all issues.

LMI filed a complaint to foreclose on the commercial mortgage, alleging that Florida Holding was in default of the promissory note. Florida Holding answered the complaint asserting affirmative defenses, as well as a compulsory counterclaim for rescission, fraud, negligent misrepresentation, and unjust enrichment among other things. In its counterclaim, Florida Holding alleged that LMI fraudulently misrepresented zoning requirements and their effect on leases with its tenant, the Broward Sheriff's Office (BSO). Florida Holding further alleged

that these misrepresentations induced it to purchase the property and execute the promissory note and mortgage in question.

LMI moved for summary judgment, supported by an affidavit from LMI's representative Carlos Segrera who stated that LMI was in physical possession of the note, that the note was endorsed in blank, and that he was prepared to present the note at the summary judgment hearing. Segrera also confirmed that Florida Holding was in default under the note and mortgage. Before the trial court heard the motion, LMI assigned the note and mortgage to Lauderhill Lending who was substituted as the new plaintiff "for all purposes."

Lauderhill Lending then filed its own amended complaint for foreclosure while also seeking to re-establish the promissory note, which had been lost. Regarding the note, Lauderhill Lending alleged that LMI assigned the note to Ocean Bank, a non-party, who then assigned the note back to LMI. LMI in turn assigned the note to Lauderhill Lending, but Ocean Bank "lost or misplaced" the original note while it was in its possession. These allegations were corroborated by an affidavit from Rogelio Villarreal of Ocean Bank attesting to those facts.

Florida Holding answered Lauderhill Lending's amended complaint with the same affirmative defenses and counterclaim that had been directed against LMI, asserting that LMI procured the mortgage and note by false pretenses and misrepresentations relating to BSO's lease on the mortgaged property. Since LMI was no longer a party following its assignment of the note to Lauderhill Lending, the trial court determined that this counterclaim would be considered a third-party claim.

While the third-party claim against LMI was still pending, Lauderhill Lending moved for summary judgment on both the foreclosure and re-establishment of the lost note.[1] The motion stated in part:

> 2. Plaintiff relies on The Affidavits Filed in Support of this Motion for Summary Judgment, which establish the execution of the note and mortgage, the note's maturity, the existence and loss of the note, the defaults thereon and the balance presently due.
>
> 3. In further support of this Motion, Plaintiff relies on the pleadings of record.

---

[1] Along with this motion, Lauderhill Lending filed an affidavit of indebtedness, among other things.

Florida Holding responded to Lauderhill Lending's motion claiming: the amount owed was in dispute, its affirmative defenses were unresolved and precluded summary judgment, and that Lauderhill Lending did not produce the original note. Florida Holding submitted an affidavit by its manager, Harry Dorvilier, who claimed LMI made various false representations about the condition of the property during the purchase negotiations. Specifically, Dorvilier claimed LMI stated the BSO leases were "true and correct and have not been modified," but he later learned those leases had been modified by a 2009 ordinance which required BSO to leave the property before the end of its lease. According to Dorvilier, LMI also stated that the building had a new roof when it was in fact just made to look like the roof had been repaired.

Lauderhill Lending responded in turn by filing the affidavit of David Scharf, a BSO representative, opposing Florida Holding's allegations. Scharf stated that BSO executed estoppel letters, which were filed with the affidavit, confirming its obligation to remain as a tenant through the duration of its lease. However, Scharf stated the conditions of the property were "deplorable," and BSO previously notified Florida Holding of "its obligation to repair water leaks, mold and other physical conditions that were causing [BSO's] constructive eviction from the property."[2] Scharf alleged that BSO would have fulfilled its contractual obligations under the lease but for the above defects and its alleged constructive eviction. He also affirmatively stated that BSO's decision to vacate the property had nothing to do with the 2009 ordinance mentioned by Dorvilier in his affidavit.

Lauderhill Lending also pointed out that under the initial contract between Florida Holding and LMI, Florida Holding acknowledged it was purchasing the property "as is" and LMI made "absolutely no warranties, representations or covenants . . . regarding the Property or the condition or quality thereof . . . ." Lauderhill Lending highlighted the provision of the contract wherein Florida Holding stipulated to performing and relying on its own inspections.

At the hearing on Lauderhill Lending's motion for summary judgment of foreclosure, Florida Holding argued that Lauderhill Lending's "three sentence" motion was inadequate and that, as a result, it was "confounded as to how to respond." Lauderhill Lending responded to these alleged inadequacies and ambiguities by setting out in detail what materials it was

---

[2] Ultimately, BSO sued Florida Holding, and the parties entered into a mediated settlement agreement allowing BSO to break its lease and vacate the premises.

relying on for the motion. Lauderhill Lending also confirmed that it was not seeking summary judgment on the "factual claims in the third-party complaint against [LMI]," but only on the issues of foreclosure and the lost note.

Due to Florida Holding's claim that it could not properly respond to Lauderhill Lending's motion, the trial court elected to continue the hearing to allow Florida Holding time to respond. As to whether Lauderhill Lending would have to file another motion for summary judgment to correct its alleged lack of specificity, the trial court and Florida Holding's counsel had the following discussion:

> [FLORIDA HOLDING]: Your Honor, could we — you know, part of the problem is that in order for me to be able to recall everything —
>
> THE COURT: I think we are going to make the court reporter happy.
>
> [FLORIDA HOLDING]: — I think that is probably what is going to have to be required. I don't know that I should bear the entirety of that expense. Maybe we split the expense if he wants to I mean, it saves some money actually than to have to redraw his summary judgment. **I'm willing to go off of what the court reporter has transcribed** or alternatively, I would suggest that a proper motion for summary judgment be filed in this case with a proper statement of undisputed facts and the case law that he's going to rely upon and the record citations that he's going to point to for the places for his motion. If I receive a proper motion, Your Honor, I promise you will receive a proper response. And I think then we could have a more informed discussion at a hearing.
>
> THE COURT: I think at this point, [Lauderhill Lending] has laid it all out on the record. I don't know that necessarily, [Lauderhill Lending], you need to go back and draft a motion that reiterates what you said here today. If you guys can agree on splitting the transcript that would be great, and I would love a copy of that too, so I could be prepared. And then you get your response and we will just keep moving forward.

(Alterations and emphasis added).

In line with this discussion, the parties ordered a transcript of the hearing. Because of Florida Holdings' agreement with this proposed plan, Lauderhill Lending never submitted an amended motion for summary judgment.

Two months after that initial hearing, the trial court reconvened on Lauderhill Lending's motion and heard arguments from both parties. Again, Florida Holding complained Lauderhill Lending's written motion and its testimony in support of that motion at the initial hearing were insufficient to support summary judgment:

> [FLORIDA HOLDING]: We looked at, we ordered the transcript from the last hearing so we could kind of apprise ourselves of all the arguments that were made and we received the hearing transcript. I went through it and frankly, there's not much more that's in the transcript other than just kind of more of [the] same thing; that everything is kind of before your Honor and there's no genuine issue of material fact.

After considering the arguments and submissions of counsel, the trial court granted summary judgment in favor of Lauderhill Lending on both the foreclosure and lost note counts. This appeal follows.

This court reviews orders granting summary judgment *de novo. See Craven-Lazarus v. Pennymac Holdings, LLC*, 199 So. 3d 1029, 1030 (Fla. 4th DCA 2016).

Under Florida Rule of Civil Procedure 1.510, a motion for summary judgment "must state with particularity the grounds upon which it is based and the substantial matters of law to be argued and must specifically identify any affidavits, answers to interrogatories, admissions, depositions, and other materials as would be admissible in evidence ('summary judgment evidence') on which the movant relies." Fla. R. Civ. P. 1.510(c). Rule 1.510(c) "is designed to prevent 'ambush' by allowing the nonmoving party to be prepared for the issues that will be argued at the summary judgment hearing." *City of Cooper City v. Sunshine Wireless Co., Inc.*, 654 So. 2d 283, 284 (Fla. 4th DCA 1995) (quoting *Swift Indep. Packing Co. v. Basic Food Int'l, Inc.*, 461 So. 2d 1017, 1018 (Fla. 4th DCA 1984)). Where a motion states "only in general terms that no material issues of fact or law existed" and that its movant is entitled to relief, such motion is insufficient to place the nonmoving party on notice of the issues that will be argued. *Locke v. State Farm Fire & Cas. Co.*, 509 So. 2d 1375, 1377 (Fla. 1st DCA 1987).

Florida Holding contends Lauderhill Lending's motion for summary judgment did not meet the requirements of rule 1.510. However, the record shows Florida Holding waived the right to require Lauderhill Lending to refile its motion with more specificity at the first hearing when it stated—on the record—that Lauderhill Lending did not have to "redraw its summary judgment motion" if Florida Holding received the hearing transcript. As stated in *Millsaps v. Kaltenbach*, 152 So. 3d 803, 805 (Fla. 4th DCA 2014), "[a] party cannot successfully complain about an error for which he or she is responsible or of rulings that he or she has invited the trial court to make." A plaintiff may "waive[] any procedural irregularity in [a] motion for summary judgment." *Wong v. Crown Equip. Corp.*, 676 So. 2d 981, 982 (Fla. 3d DCA 1996); *accord Vidal v. Liquidation Props., Inc.*, 104 So. 3d 1274, 1276 (Fla. 4th DCA 2013). And if an "issue [i]s waived, it cannot be grounds for reversal on appeal." *Vidal*, 104 So. 3d at 1276. Therefore, Florida Holding cannot now complain that the trial court opted to proceed down one of the roads it agreed to travel.

Regarding Lauderhill Lending's motion for summary judgment on the lost note issue, this court stated in *U.S. Bank National Ass'n v. Benoit*, 190 So. 3d 235, 237 (Fla. 4th DCA 2016), that:

> [A] judgment of foreclosure does not always require surrender of the original note. For example, where a plaintiff satisfies the requirements for the enforcement of a lost, destroyed, or stolen instrument, the plaintiff may foreclose on a property even where the plaintiff no longer has possession of the original note.

The requirements to enforce a lost note are set forth in Section 673.3091, Florida Statutes (2017), which provides:

> (1) A person not in possession of an instrument is entitled to enforce the instrument if:
>
>   (a) The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;
>
>   (b) The loss of possession was not the result of a transfer by the person or a lawful seizure; and

6

(c) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

When a party relies on an affidavit to reestablish a lost note, "the affidavit must establish that whoever lost the note 'was entitled to enforce it when the loss of possession occurred; the loss of the note was not the result of a transfer or lawful seizure; and [the bank] cannot reasonably obtain possession of the note because of the loss.'" *Sabido v. Bank of N.Y. Mellon*, 241 So. 3d 865, 867 (Fla. 4th DCA 2017) (alteration in original) (quoting *Home Outlet, LLC v. U.S. Bank Nat'l Ass'n*, 194 So. 3d 1075, 1078 (Fla. 5th DCA 2016)), *clarified on denial of reconsideration*, 238 So. 3d 867 (Fla. 4th DCA 2018). Here, Villarreal's unrebutted affidavit attested to the fact that Ocean Bank had rightful possession of the original promissory note which served as security for its previous loans to LMI. When Ocean Bank sought to retrieve the original note to deliver it back to LMI, the location of the note "could not be determined despite OCEAN BANK's diligent search and inquiry." Villarreal's affidavit confirmed that although the original note had either been "lost, misplaced or otherwise destroyed," LMI was entitled to enforce the instrument after it acquired possession from Ocean Bank. *See* § 673.3091(1)(a). The affidavit also verified that the location of the note could not be determined, but "to the best of [his] knowledge" this loss of possession was not the result of a transfer or seizure since it had not been "endorsed, pledged, transferred, sold, encumbered, conveyed or hypothecated" to anyone else. *See* § 673.3091(1)(b) & (c).

Based on the pleadings, depositions, answers to interrogatories, and admissions on file together with the unrebutted lost note affidavit of Villarreal of Ocean Bank, Lauderhill Lending met the requirements for the enforcement of the lost note, and the trial court properly granted summary judgment on this issue. Florida Holding's failure to explicitly contest the alleged discrepancies between Villarreal's and Segrera's affidavits at the summary judgment hearing precludes it from doing so here on appeal. *See Wildwood Props., Inc. v. Archer of Vero Beach, Inc.*, 621 So. 2d 691, 692 (Fla. 4th DCA 1993) ("As to the granting of summary judgment on appellant's lien foreclosure against appellee, we affirm because the grounds now raised were not brought to the attention of the trial court in opposition to the summary judgment.").

As to the issue of summary judgment on the count seeking foreclosure on the note and mortgage, we also find no error. Lauderhill Lending represented to the trial court that it was not seeking summary judgment on Florida Holding's third-party claims against LMI. To the extent that those claims for fraud or misrepresentation are viable, and that material issues of fact remain as to those issues, they were not disposed by the foreclosure or lost-note judgment. In fact, Lauderhill Lending conceded at trial that those third-party claims would still be left for resolution by the court separate and apart from the foreclosure action. Therefore, Lauderhill Lending's final judgment, as to the foreclosure and lost note issues, still allows Florida Holding to proceed on its related third-party claims for relief against LMI. *See, e.g., Penmont Enters., Inc. v. Dysart*, 340 So. 2d 1285, 1286 (Fla. 3d DCA 1977) (stating that the issues of cancellation and rescission of contract are "severable and do not affect the right to foreclosure").

For these reasons, we affirm the trial court's summary judgment entered in favor of Lauderhill Lending as to its claims for foreclosure and re-establishing the lost note.

*Affirmed.*

DAMOORGIAN, J., concurs.

WARNER, J., concurs in part and dissents in part with opinion.

WARNER, J., concurring in part, dissenting in part.

I concur with that part of the majority opinion which holds that Florida Holding waived the right to require Lauderhill Lending to refile its motion for summary judgment to allege more specifically its grounds for summary judgment. I would reverse, however, on the merits as to the claim to re-establish the lost note, as I think the evidence is not conclusive that Ocean Bank was entitled to possession of the note when its loss occurred. There were two conflicting affidavits filed in this case as to who had possession of the note. LMI had filed an affidavit of its representative, Carlos Segrera, in which he stated that LMI was in physical possession of the note in September 2016. The affidavit of Rogelio Villarreal of Ocean Bank, filed with Lauderdale Lending's motion for summary judgment, stated that Ocean Bank had possession of the note from 2013 to 2017. The two affidavits conflict. Therefore, a material issue of fact remained on the lost note issue, on which the foreclosure depended.

*       *       *

8

*Not final until disposition of timely filed motion for rehearing.*